**UNITED STATES of America, Plaintiff,**

**v.**

**GOVERNMENT DEVELOPMENT BANK, Defendant and Third–Party Plaintiff,**

**v.**

**FEDERAL RESERVE BANK OF NEW YORK, Third–Party Defendant.**

Civ. No. 88–0531 (PG).

United States District Court, D. Puerto Rico.

Aug. 13, 1990.

130

Lydia Pelegrín, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Pedro Juan Pérez Nieves, Santurce, P.R., for third-party plaintiff.

Thomas C. Baxter, Jr., New York City, and Jaime Sifre Rodríguez, Hato Rey, P.R., for third-party defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This is a contract action between the United States, the Government Development Bank,[1] and now the Federal Reserve Bank of New York.[2] The matter pends before the Court on FRB–NY's motion to dismiss GDB's third-party complaint, its

1. Hereinafter, GDB.

2. Hereinafter, FRB–NY.

3. It should be noted here that FRB–NY is one of the twelve reserve banks which are not federal agencies but "private banking corporations whose stock is owned by the member commercial banks within their district." *Committee for Monetary Reform v. Board of Governors of the*

subsequent oppositions, and the corresponding replies.

The salient facts have already been rehearsed in our previous opinion on the subject and shall not be repeated here. *See United States of America v. Government Development Bank*, 725 F.Supp. 96 (D.P.R. 1989). It will suffice to recall that the contractual relationship between the parties involved, first, the appointment of third-party defendant FRB–NY[3] as the United States Department of Agriculture's fiscal agent along with the issuance of detailed instructions as to how it should carry out its agency responsibilities and, secondly, the contracting by FRB–NY for an organization (which would turn out to be GDB, a corporation chartered under the laws of Puerto Rico) to administer the Food Stamp Program in Puerto Rico. In its complaint, the United States seeks millions of dollars in damages for GDB's failure to use ordinary care and diligence in the redemption, verification, and destruction of food stamps presented to it for those purposes, an omission which permitted the theft, alteration, and subsequent multiple redemption of food stamps that were in its custody. GDB, on the other hand, seeks to implead FRB–NY alleging that it breached the contract that existed between them, namely, that it failed to provide GDB with adequate facilities and equipment, that it failed to adopt suggestions for improvement of control and security in the operations, and that it failed to provide adequate and timely guidance and instructions for the resolution of problems noted by the auditors and by GDB officers and employees.

FRB–NY's motion to dismiss attacks the propriety of GDB's third-party complaint alleging that it fails to meet the requirements of third-party practice under Fed.R.

*Federal Reserve System,* 766 F.2d 538, 540 (D.C. Cir.1985). Those twelve reserve banks provide various financial services to the United States and do so in their capacity as "fiscal agents of the United States," 12 U.S.C. Sec. 391. The FRB–NY is the Reserve Bank which serves the *Second Federal Reserve District,* a district that includes Puerto Rico within its territorial boundaries.

Civ.P. 14(a). It also states its belief that had this Court had before it the arguments set forth in the accompanying memorandum of law we would have originally denied defendant-and-third-party-plaintiff GDB's motion for permission to file a third-party complaint. Those words, as will soon be apparent, would prove to be prophetic.

## I

We begin with the plain words of the procedural rule that governs the third-party complaint now before the Court. In its pertinent part, Fed.R.Civ.P. 14(a) states:

> WHEN A DEFENDANT MAY BRING IN A THIRD PARTY: At any time after the commencement of the action a defending party, as a third-party plaintiff, may cause a summons to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.* (emphasis supplied)

As is made clear by case law and commentators alike, two principles flow from the above-quoted language which form the basis of third-party practice under the federal rules. We present them *confestim.*

■ First, it is settled that a third-party plaintiff cannot attempt to stand in the shoes of the plaintiff and assert a claim against the third-party-defendant that rightfully belongs to the plaintiff itself. To be valid, a third-party complaint must assert a claim that the third-party plaintiff has in its own right. *See* 3 MOORE'S FEDERAL PRACTICE P. 14.01 [1.–1], at

14–6 ("[t]he 1946 amendments eliminated the defendant's right to implead a person who is or may be liable to the *plaintiff*"). Secondly, the claim that the third-party plaintiff asserts in its own right must be derivative of some claim set forth in the plaintiff's complaint. *Metropolitan Life Ins. Co. v. Ditmore,* 729 F.2d 1, 9 (1st Cir.1984) ("[t]hird party claims [are] by definition logically dependent on the resolution of the original suit"). If the claim asserted in the third party complaint is "separate and independent" from the main action, impleader must be denied. 6 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1446 (Supp.1989) (citations omitted).

■ In the case at bar, GDB is actually attempting to assert a claim which properly belongs to the United States.[4] The Government could have instituted direct actions against both GDB and FRB–NY for all damages that it suffered during the implementation of the Food Stamp Program in Puerto Rico,[5] but it has made clear that it is seeking to hold only GDB responsible and only for those damages due to GDB's own negligence.[6] (The totality of the damages would, of course, include those allegedly caused by FRB–NY, damages which, if in fact existent, will apparently never be claimed.) GDB's attempt to bring FRB–NY into this litigation is indeed an attempt to force the United States to institute a claim it has elected not to assert, a fact which is all too apparent if we note that the only way FRB–NY can be held responsible is if the Government also tries to impose liability on GDB for damages the United

---

**4.** We agree with the GDB that, from the procedural point of view, they have in fact sufficiently *alleged* that FRB–NY is liable to it, and not just to Government, and that any allegation to the effect that FRB–NY is responsible to the United States would be a superfluous allegation that would not detract from its own third-party complaint. However, substantively speaking, the question is not whether the defendant believes it can (and does indeed) file a particular claim but whether they in fact have a right to assert it. As we note in the text, the claim they are attempting to assert properly belongs to the Government and not to GDB.

**5.** Paragraph No. 8 of the agreement dated July 3, 1961, whereby the Food Nutrition Service of

the U.S.D.A. authorizes FRB–NY to enter into a contract with GDB for the handling of the Food Stamps Program, states:

> 8. The Department of Agriculture shall indemnify and hold Federal harmless from and against all loss, cost, damage and expense, including counsel fees, arising out of, or in connection with this letter agreement or any action taken by Federal pursuant thereto, as well as the cost and expense of defending against any claim of liability in respect of such agreement of action, *unless due to Federal's own negligence.* (emphasis supplied)

**6.** *See* Paragraphs 20, 24, and 27 of the Complaint.

States allegedly suffered at the hands of FRB–NY. We must remember that Rule 14(a)'s requirement encompasses, after all, "a respect for plaintiff's litigative decision regarding whom to sue." *Index Fund v. Hagopian*, 417 F.Supp. 738, 744 (S.D.N.Y. 1976). Of course, FRB–NY officials will undoubtedly be instrumental witnesses throughout this litigation for the purpose of delineating the extent of the liability, if any, to be attributed to GDB. But the bottom line is that the United States, being the one entitled to recover damages from its fiscal agent FRB–NY, has presumably balanced the factors for and against such an action and (citing a "close and ongoing commercial relationship") has elected not to sue. Its decision must therefore be afforded some respect.

Furthermore, GDB's third-party complaint fails to conform to the requirements of federal third-party practice on yet another front. Simply put, GDB cannot be held liable to the United States for damages caused by FRB–NY (since the Government is not seeking those damages), so GDB cannot possibly state a derivative claim against FRB–NY as Fed.R.Civ.P. 14(a) demands. In other words, the liability of the third-party defendant is not dependent on the outcome of the main claim, so the third-party complaint is not properly lodged under Fed.R.Civ.P. 14(a). *See Metropolitan Life Ins. Co.*, 729 F.2d at 9. A couple of factors serve to prove our point.

First, a look at the allegations submitted by the two parties supports the conclusion that GDB's third-party complaint is in fact "separate and independent" from the main action. The United States alleges that GDB failed to exercise due diligence in its "operation for the procedures for redeeming, verifying, and destroying" food stamps. *See* Paragraph 20 of its Complaint. Defendant GDB, on the other hand, wishes to implead FRB–NY alleging that it incurred in faults such as "failing to provide GDB with adequate facilities and equipment; in failing to adopt ... suggestions for improvement of control and security in the operations; failing to provide adequate and timely guidance and instructions for the resolution of problems noted by the auditors and by GDB officers and employees...." *See* Paragraph 14 of its Third–Party Complaint. Thus, the main claim involves GDB's execution of the program, the third-party action relates to FRB–NY administration of GDB's activities. *See Watergate Landmark Condo. v. Wiss, Janey, et al.*, 117 F.R.D. 576 (E.D. Va.1987) (third-party complaint dismissed where main action involved the administration and design of a task while third-party claim involved the negligent execution of the same and the main action specifically excluded inadequate workmanship as basis for recovery). Whatever negligence FRB–NY incurred in during the performance of its administrative responsibilities, it is separate and independent from the negligence imputed to GDB in the execution of the program: the one can be found to have been grossly negligent, while not the other, and vice versa. This being so, FRB–NY's alleged negligence, if any, can in no way derive from the negligence attributed to GDB.

Similarly, the inappropriateness of Rule 14 impleader in this action is further evinced by the different types of proof each party's allegations will require. As we have noted above, while the United States' complaint focused on GDB's alleged shortcomings in executing FRB–NY's procedures for redeeming, verifying, and destroying food stamps, GDB's focused on FRB–NY's alleged shortcomings in administering GDB's conduct—its failure to adopt adequate standards, its choice of facilities, its inability to improve the security of operations—conditions which are besides the United States' complaint. Thus, conceivably, the United States could fail in its claim that GDB acted without due diligence in its execution of the program, while GDB might, at the same time, prevail on its claim that FRB–NY failed to properly administer GDB's conduct. In that event, however, we would reach the ridiculous situation where GDB could be awarded no damages because the main claim would have failed. *Cf. Watergate*, 117 F.R.D. at 578 n. 2.

An additional argument, not discussed by the parties to this suit, denotes the internal consistency of the result we have reached today and deserves to be mentioned before we leave this case. Third-party practice under the federal rules is premised on the existence of a substantive right of indemnity or contribution in favor of the defendant in the original suit. *See* 3 MOORE'S FEDERAL PRACTICE Par. 14.03[1], at 14–18, 6 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1446, p. 367. "The obvious case for impleader, of course, is the one in which the third-party defendant, …, is bound by contract to indemnify the defendant (third-party plaintiff), …, against the liability on which he is sued by the plaintiff …" *Id.* Par. 14.10, at 14–57. Perhaps second in line is the case "[w]here the applicable state law[7] permits contribution among joint tort-feasors, regardless of whether the plaintiff has sued them all in the first instance." *Id.* Par. 14.11, at 14–67.[8] In Puerto Rico, the law recognizes the right of contribution ("solidaridad")[9] among joint tort-feasors, *Sánchez Rodríguez v. López Jiménez*, 87 J.T.S. 36, but in contract actions, such as the one at bar,[10] Puerto Rico's contract law states "that the solidarity of the obligations is not assumed, but there should be an express agreement to that effect," *Caribbean Ins. Co. v. District Court*, 99 P.R.R. 89, 92 (1970), *Pauneto v. Nuñez*, 115 D.P.R. 591, 596 (1984), P.R. Laws Ann. tit. 31, §§ 3101 & 3102. The contractual relation between FRB–NY and GDB providing no right of contribution or indemnity in favor of the latter, GDB's third-party complaint can have no basis on which to stand.[11]

## II

Before parting, we write briefly to address an argument presented by the Government which merits some attention. The United States first asserts that FRB–NY is its agent and, conversely, that it is the principal of FRB–NY. Then it cites the well-established rule of law that principals are liable for the torts committed by their agents within the authority granted in the agency relationship. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982), *Rivera v. Mal-*

**7.** Where, as here, "the third-party action is not based on a theory of federal law," it is settled that "the right to contribution or indemnity must be determined under the applicable state law …," 3 MOORE'S FEDERAL PRACTICE Par. 14.03[3], at 14–23.

**8.** There are others, less common cases, such as subrogation, express or implied warranty, etc. *See* 6 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE Sec. 1446, p. 363.

**9.** We must recognize here the difficulty that is to be encountered in the translation of legal terms from the Spanish language to the English language. We realize, of course, that the term "solidaridad" is much broader than the terms "right of contribution," but by equating the two we mean to refer to that aspect of "joint and several" liability which refers to the right of a "joint and severally" liable debtor who has paid the totality of a debt, to recover that portion of the debt which is rightfully the responsibility of the other "joint and severally" liable debtor, i.e., the right of contribution. *See Ramos Acosta v. Caparra Dairy*, 85 J.T.S. 4.

**10.** The parties, relying on the cases of *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983) and *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), have apparently agreed that the doctrine of comparative negligence has a place in breach of contract actions. Here, however, we are not referring to the doctrine of comparative negligence (which refers to the possibility of apportioning damages between several codefendants), but to the right of contribution among joint and severally liable debtors, an entirely separate and distinct legal concept, *see* footnote 9, supra.

**11.** As an afterthought, we note that GDB could have, no doubt, instituted a simple, independent breach of contract claim against FRB–NY. If, for example, FRB–NY has breached some responsibility it owed to GDB on the basis of the contract between them (a point over which we express no opinion), a claim whose validity would be determined under Fed.R.Civ.P. 8 and 12 can be maintained. But GDB has not filed a simple breach of contract claim. GDB has made a contingent claim of breach through a third-party complaint which must not only satisfy the requirements of Fed.R.Civ.P. 8 and 12 but also the requirements of Fed.R.Civ.P. 14. A cardinal principle of Rule 14 is that the third-party complaint must be derivative of the main complaint. There being no way in which FRB–NY can be found to be secondarily liable to GDB for damages the latter caused to the United States, GDB's third-party complaint must be dismissed.

*donado*, 72 P.R.R. 448, 452 (1951), P.R. Laws Ann. tit. 31, § 5142. This being so, their argument goes, any culpable conduct by FRB–NY will be attributed to the United States and will merely serve to reduce the amount of damages that the Government can recover from GDB. Permitting impleader will therefore not serve any useful purpose, since no damages will be recovered from FRB–NY and it will simply result in a duplication of the main action. This argument has been followed by several courts in dismissing third-party complaints under situations analogous to the one at bar. *Republic National Bank of New York v. Eastern Airlines, Inc.*, 639 F.Supp. 1410 (S.D.N.Y.1986), *aff'md.*, 815 F.2d 232 (2d Cir.1987), *Ragusa v. City of Streator*, 95 F.R.D. 527 (N.D.Ill.1982), *State v. Popricki*, 89 A.D.2d 391, 456 N.Y. S.2d 850 (3rd Dept.1982).

Whatever the merits of the foregoing argument, the same has no application to the facts of this case. Although FRB–NY is a "fiscal agent" of the United States and their relationship resembles the principal-agent relationship in most respects, it does contain one important difference. The agreement through which the Food Nutrition Service of the U.S.D.A. authorized FRB–NY to enter into a contract with GDB for the handling of the Food Stamps Program expressly exempted the United States from liability arising from negligent actions committed by its agent in the performance of the contract, *see* footnote 5, supra. Thus, the United States, as "principal," does not in fact assume responsibility for the tortious acts of its "agent," FRB–NY. The premise on which it is based lacking merit, the argument falls on the force of its own weight.

### Conclusion

In view of the foregoing, defendant GDB's third-party complaint must be dismissed. Although FRB–NY officials will undoubtedly be instrumental witnesses throughout this litigation with regard to the allocation of relative faults, the damages allegedly caused by it will presumably never be claimed. The United States, enjoying the right of choice and being in the best position to balance the factors for and against such an action, has elected to recover only the damages caused to it by GDB. Its decision not to institute an action against its fiscal agent must be respected.

WHEREFORE, defendant Government Development Bank's third-party complaint is hereby DISMISSED. Pursuant to Fed. R.Civ.P. 54(b), the Court additionally hereby ORDERS that, there being no just reason for delay, the Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.